07-1892-cv
Sousa v. Roque

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: November 5, 2008                    Decided: August 21, 2009)

Docket No. 07-1892-cv

BRYAN SOUSA,

     *Plaintiff-Appellant*,

     v.

ARTHUR ROQUE JR., ROBERT KALISZEWSKI, JOANNE DRIVER, WILLIAM EVANS, and JANE
STAHL,

     *Defendants-Appellees.*[*]

Before: CABRANES and HALL, *Circuit Judges*, and GLEESON, *District Judge*.[**]

Plaintiff, a former employee of the Connecticut Department of Environmental Protection

("DEP"), appeals an April 23, 2007 judgment of the United States District Court for the District of

Connecticut (Janet C. Hall, *Judge*), which granted a motion by defendants, all DEP officials, for

summary judgment on plaintiff's claims that they had retaliated against him in violation of the First

Amendment for complaints he made regarding primarily workplace violence.  Specifically, plaintiff

argues that although the District Court correctly concluded that he was speaking "as a citizen" and not

"as an employee" for the purposes of the First Amendment, the District Court erred in concluding that

---

[*] The Clerk of Court is directed to amend the official caption as indicated.

[**] The Honorable John Gleeson, of the United States District Court for the Eastern District of New York,
sitting by designation.

1

his speech was unprotected because it was not on a matter of public concern.

We acknowledge that our precedents on what constitutes "a matter of public concern," and particularly, the extent to which a court may take into account the speaker's motives when making that determination, are less than clear. We reaffirm our earlier holding in *Reuland v. Hynes*, that "the speaker's motive is not dispositive in determining whether speech is on a matter of public concern." 460 F.3d 409, 411 (2d Cir. 2006). Because our holding is at odds with the District Court's conclusion that Sousa's speech did not address a matter of public concern *solely* because he was motivated by employment grievances, we vacate the District Court's order granting summary judgment to defendants on Sousa's First Amendment claim.

Vacated and remanded.

> JOHN R. WILLIAMS, New Haven, CT, *for Plaintiff-Appellant.*
>
> CLARE E. KINDALL, Assistant Attorney General, for Richard Blumenthal, Attorney General of the State of Connecticut, Office of the Attorney General, Hartford, CT, *for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff Bryan Sousa ("plaintiff" or "Sousa"), a former employee of the Connecticut Department of Environmental Protection ("DEP"), appeals an April 23, 2007 judgment of the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*). That judgment granted a motion by Arthur Roque, Commissioner of the DEP; Robert Kaliszewski, Sousa's supervisor at the DEP; Joanne Driver, a personnel officer at the DEP; William Evans, a Bureau Chief of the DEP Personnel/Bureau of Financial and Support Services; and Jane Stahl, Deputy Commissioner of the DEP (collectively "defendants" or "DEP officials"), for summary judgment on plaintiff's claims that they had retaliated against him in violation of the First Amendment for complaints he made regarding

primarily workplace violence. Specifically, plaintiff argues that although the District Court correctly concluded that he was speaking "as a citizen" and not "as an employee" for the purposes of the First Amendment, the District Court erred in concluding that his speech was unprotected because it was not on a matter of public concern.

We acknowledge that our precedents on what constitutes "a matter of public concern," and particularly, the extent to which a court may take into account the speaker's motives when making that determination, are less than clear. We reaffirm our earlier holding in *Reuland v. Hynes*, that "the speaker's motive is not dispositive in determining whether speech is on a matter of public concern." 460 F.3d 409, 411 (2d Cir. 2006). Because our holding is at odds with the District Court's conclusion that Sousa's speech did not address a matter of public concern *solely* because he was motivated by employment grievances, we vacate the District Court's order granting summary judgment to defendants on Sousa's First Amendment claim.

## BACKGROUND

### I. Factual Overview[1]

Sousa began working as an engineer at the DEP in July 1987. By 1995, he had become a supervising sanitary engineer in the Water Bureau, a division within the DEP. In October 2002, Sousa had a verbal and physical altercation with Jonathan Goldman—a "lower-level [DEP] employee." *Sousa v. Roque*, 3:05-cv-00822 (JCH), 2007 WL 1100318, at *2 (D. Conn. April 10, 2007). As a result of the incident, both Sousa and Goldman were suspended for three days without pay.

Following his altercation with Goldman, Sousa began making numerous complaints to DEP officials, focusing on the discipline he received as a result of the incident and, more generally,

---

[1] The facts that follow are taken largely from the District Court's April 10, 2007 ruling. *See Sousa v. Roque*, 3:05-cv-00822 (JCH), 2007 WL 1100318 (D. Conn. April 10, 2007). As the District Court noted, it accepted as true facts that were undisputed by the parties, and resolved disputed facts in favor of the non-moving plaintiff where there was evidence to support his allegations. *Id.* at *2 n.1.

3

workplace violence within the DEP.[2] Around this time, Sousa also reported his concerns about a hostile work environment in the DEP. Sousa complained about incidents of group harassment against him called "mobbing," which is a process of abusive behaviors inflicted over time. Specifically, he reported that he had been harassed by various lower-level employees, and that two lower-level employees had also suffered harassment—which Sousa took to be evidence, in part, of "reverse discrimination" within the DEP. Sousa then wrote to Marcia Bonito, the DEP's Affirmative Action Administrator, again focusing on his claims of a hostile work environment, workplace violence, and "reverse discrimination." He made similar complaints to Richard Blumenthal, the Attorney General of the State of Connecticut. Finally, Sousa articulated several of these concerns in an April 23, 2003 memorandum to his union.

One of Sousa's complaints in particular troubled DEP officials. On July 23, 2003, Sousa sent an e-mail to two DEP employees, Karen Calieno and Lisa Piccarello, about providing a book on "mobbing" to members of the DEP's Workplace Violence Threat Assessment Team, *id.* at *2 n.3. In the e-mail, Sousa wrote:

> When you read the book you will recognize that mobbing can often result in the death of the victim, either due to illness, accident or suicide. Another reference suggested that, in light of such ramifications, workplace mobbing should be viewed as the last remaining legal means of committing homicide. I personally see it as a form of group vigilantism.

*Id.* at *2. Following this e-mail, the Human Resources Office of the DEP ("HR") sent Sousa a letter on August 12, 2003, requiring him to undergo a fitness-for-duty evaluation.

Although the events that followed are in dispute, both parties agree that Sousa was on leave for a substantial amount of time following HR's request that he undergo a fitness-for-duty evaluation. The

---

[2] We note, as did the District Court, that Sousa claims he made complaints prior to the altercation with Goldman. *See Sousa*, 2007 WL 1100318 at *2 n.4; Compl ¶ 12. There appears to be no evidence in the record to support this assertion.

4

District Court found that Sousa was put on paid leave on September 29, 2003, and then on unpaid leave on October 15, 2003, while Sousa's doctor was gathering information for his fitness test. Sousa was eventually found fit for duty in November 2003, and he was instructed that he should report back to work on December 1, 2003. Sousa informed Evans, a Bureau Chief of the DEP Personnel/Bureau of Financial and Support Services, that he did not want to return to work out of fear for his safety. Sousa remained out of the office for the month of December, using a combination of vacation time and sick leave.

Sousa returned to work in January 2004, and then requested that he be allowed to work from home or "telecommute." Sousa's supervisors denied the request. During the months that followed, Sousa continued to take various forms of leave.[3] While Sousa was on paid sick leave in the fall of 2004, he was informed that he would have to return to work on October 18, 2004, or he would be classified as being on "unauthorized leave without pay." *Id.* at \*5. Sousa did not go to work on that date, and after five days, a hearing pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-46 (1985) ("*Loudermill* hearing"),[4] was set for November 17, 2004. There remained some concern about whether Sousa was still fit for duty; however, an independent medical examiner reported that Sousa would be fit for work as of December 20, 2004. Sousa did not return to work on that day either and a second *Loudermill* hearing was held on January 14, 2005. Following that hearing, Sousa's employment with the DEP was terminated for, *inter alia*, two instances of unauthorized absences.

---

[3] In fact, the District Court noted, based upon the undisputed facts, that "[f]rom October 2003 through December 2004, Sousa was on some form of leave for more than ten full months." *Sousa*, 2007 WL 1100318, at \*4.

[4] A *Loudermill* hearing is held to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985); *see also Fairbrother v. Morrison*, 412 F.3d 39, 45 n.4 (2d Cir. 2005) (relying on *Loudermill*).

## II.      Procedural History

On May 24, 2005, Sousa filed the instant action in the District Court, pursuant to 42 U.S.C. § 1983, alleging that defendants violated his First Amendment rights by retaliating against him for engaging in what he claimed was protected speech.  Specifically, Sousa claimed that the defendants' actions—*inter alia*, (1) requiring him to undergo a fitness-for-duty evaluation, (2) placing him on paid leave in September 2003, (3) placing him on unpaid leave in October 2003, (4) denying him continued medical leave in October 2004, (5) denying his January 2004 request to telecommute, (6) subjecting him to a hostile work environment from 2003 to his termination in 2005, and (7) terminating his employment—were all acts of retaliation against him for exercising his First Amendment right to complain about, *inter alia*, workplace violence and a hostile work environment within the DEP.  Sousa also claimed that two of defendants' actions—requiring him to undergo a fitness-for-duty evaluation and denying his request to telecommute—violated his right to equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution.  Finally, Sousa's action included state law claims for negligent infliction of emotional distress and for intentional infliction of emotional distress.

In July 2005, defendants filed a motion to dismiss the state law claims.  *See* Docket No. 3:05-cv-00822 (JCH), Entry 6 (D. Conn. July 7, 2005).  The District Court granted this motion in a December 2005 order with respect to Sousa's claim for negligent infliction of emotional distress and denied it with respect to his claim for intentional infliction of emotional distress.  *See* Docket No. 3:05-cv-00822 (JCH), Entry 25 (D. Conn. Dec. 19, 2005).  Following discovery, in December 2006 defendants moved for summary judgment, *see* Docket No. 3:05-cv-00822 (JCH), Entry 65 (D. Conn. Dec. 20, 2006), and on April 10, 2007, the District Court entered a ruling granting defendants' motion on all of Sousa's

federal claims, and declining to exercise supplemental jurisdiction over Sousa's remaining state law claim of intentional infliction of emotional distress. *See Sousa*, 2007 WL 1100318, at *8.

With respect to Sousa's First Amendment claim, the District Court stated that "[t]he first question the court must ask in deciding a First Amendment retaliation claim is whether the public employee spoke 'as a citizen upon matters of public concern' or 'as an employee upon matters of personal interest.'" *Id.* at *6 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). In considering whether Sousa was speaking as a "citizen" or as an "employee," the District Court noted that the Supreme Court in *Garcetti v. Ceballos*, 542 U.S. 410 (2006), had held that the "controlling factor" in determining whether someone is speaking as an employee was whether "the speaker's 'expressions were made pursuant to his duties.'" *Sousa*, 2007 WL 1100318, at *6 (quoting *Garcetti*, 547 U.S. at 421). Without further explanation, the Court concluded that, "[h]ere, there is no evidence that Sousa's official duties included complaining about workplace violence or harassment."[5] *Sousa*, 2007 WL 1100318, at *6. Turning to whether Sousa's speech addressed a matter of public concern, the Court found that Sousa's complaints were "the essence of an employee grievance." *Id.* at *7. The Court then concluded that "[t]here is no First Amendment protection for speech calculated to redress personal grievances in the employment context" and granted summary judgment for defendants on Sousa's retaliation claim. *Id.*

On April 23, 2007, final judgment in favor of the defendants was entered. This appeal followed.

## DISCUSSION

The only portion of the District Court's ruling that Sousa challenges on appeal is the Court's legal conclusion that his speech was not on matters of public concern and, accordingly, is not protected by the First Amendment. Appellant Br. 4. Specifically, Sousa renews the argument, made before the

---

[5] Neither party challenges the District Court's determination that Sousa was speaking as a "citizen" and not as an "employee," and we do not address the issue here.

7

District Court, that he was the victim of retaliation for speaking on matters of public concern, including hostile work environment, reverse discrimination, and workplace violence.[6]

We acknowledge that our precedents on what constitutes "a matter of public concern," and particularly, the extent to which a court may take into account the speaker's motives when making that determination, are less than clear. Based upon our reading of Supreme Court precedent, our own cases, and the cases of our sister Circuits, we conclude, as we did in *Reuland*, that "the speaker's motive is not dispositive in determining whether speech is on a matter of public concern." 460 F.3d at 411.

## I.     Standard of Review

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *see also, e.g.*, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "We review de novo the district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008).

## II.     "Matter[s] of Public Concern"

For Sousa's retaliation claim to be viable, we must find that his speech was protected by the First Amendment. It is established law in this Circuit that, "[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). To determine whether or not a plaintiff's speech is protected, a court must begin by asking "whether the employee spoke as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418. If the court determines that the plaintiff either did not speak as a

---

[6] We note that Sousa now argues that his speech also addressed, *inter alia*, nepotism within the DEP, agency hiring practices, and sexual harassment within the DEP. *See* Appellant Br. 19-20. These claims were not raised before the District Court, and we do not address them here. *See, e.g.*, *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995).

citizen or did not speak on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.*

The Supreme Court has defined "a matter of public concern" as one that "relat[es] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48.

*Connick* concerned the speech of Sheila Myers, an Assistant District Attorney in New Orleans. After Myers learned that she would be transferred to prosecute cases in a different section of the criminal court—a move she strongly opposed—she distributed a questionnaire, "soliciting the views" of the other staff members concerning the "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns." *Id.* at 141. After distributing the survey, Myers was told by her supervisor that her employment was terminated because of her refusal to accept the transfer. *Id.* She filed suit under 42 U.S.C. § 1983, alleging that her employment was wrongfully terminated because she had exercised her constitutionally protected right to free speech. *Id.*

In assessing Myers's statements, the Supreme Court concluded that, with one exception, the issues she raised in her questionnaire did not involve matters of public concern. The Court noted that "Myers did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities." *Id.* at 148. Instead, the Court observed, "the focus of Myers'[s] questions is . . . to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause célèbre." *Id.* The Court went on to state that "[w]hile as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First

9

Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 149.

Despite the Court's description of Myers's motive, it went on to conclude that one question in her questionnaire did address a "matter of public concern"—namely, whether any of the assistant district attorneys "ever fe[lt] pressured to work in political campaigns on behalf of office supported candidates." *Id.* The Court noted that "there is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service," and concluded that "[g]iven this history, we believe it apparent that the issue of whether assistant district attorneys are pressured to work in political campaigns is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Id.* Accordingly, the *Connick* decision supported, among other things, the proposition that a speaker's motive was not dispositive in determining whether his or her speech addressed "a matter of public concern."

Our Court directly addressed the significance of a speaker's motive in *Lewis v. Cowen*, 165 F.3d 154 (2d Cir. 1999), a case involving the speech of the chief of a state lottery unit, who alleged that he was fired in retaliation for "refusing to publicly support a change in the lottery." *Id.* at 157. The *Lewis* Court began its inquiry into whether the unit chief's speech addressed a matter of public concern by noting that "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Id.* at 163 (citing *Connick*, 461 U.S. at 147-48 and n.7). The *Lewis* Court stated that "[i]n reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a

10

broader public purpose." *Lewis*, 165 F.3d at 163-64 (citing *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1212 (10th Cir. 1998)).

Despite the fact that the *Lewis* Court suggested that the speaker's motive was critical in considering whether his or her speech addressed a matter of public concern, in *Cioffi v. Averill Park Central School District Board of Education*, 444 F.3d 158, 165-66 (2d Cir. 2006), we held that motive is *not* dispositive in making this determination. As our Court stated:

> [D]efendants' contention that a speaker's primary motivation for speaking is dispositive in determining whether speech is personal or public conflicts directly with the Supreme Court's holding in *Connick*. There, a public employee distributed a questionnaire to fellow co-workers in order to marshal support for her personal grievance with superiors. *Connick*, 461 U.S. at 148. Although personal interest primarily motivated the speech, the Supreme Court concluded that one of the questions on the questionnaire touched upon a matter of public concern and was thus protected by the First Amendment. *Id.* at 148-49. *In other words, although the speaker's overall motivation was personal, that fact was not dispositive.* If it were, then the Supreme Court's direction that we examine the content, form, and context of a given statement to determine whether it addresses a matter of public concern would be stripped of its meaning and purpose.

*Cioffi*, 444 F.3d at 165-66 (emphasis added and footnote omitted).

The decision in *Cioffi* was echoed and expanded by our decision in *Reuland*, 460 F.3d 409. *Reuland* concerned a Senior Assistant District Attorney from the Brooklyn District Attorney's Office, who had given an interview to *New York* magazine about a book he had written, which was a "fictionalized account of a Brooklyn District Attorney." *Id.* at 411. In the interview, the Senior Assistant District Attorney stated that "Brooklyn is the best place to be a homicide prosecutor" because "[w]e've got more dead bodies per square inch than anyplace else." *Id.* at 411-12 (internal quotation marks omitted). In assessing whether or not the speech in question addressed a matter of public concern, a divided panel of our Court reviewed the Supreme Court's decision in *Connick*, and held that "the speaker's motive, while one factor that may be considered, is not dispositive as to whether his speech addressed a matter of public concern." *Id.* at 415. Relying on this general proposition, the

11

panel majority held that, despite the fact that the jury at trial found that Reuland was not motivated by a desire to address a matter of public concern, the statement nevertheless addressed what the Court believed was inherently a matter of public concern: the crime rate in Brooklyn. *Id.* at 418. The panel majority continued: "[w]e therefore have little difficulty concluding that Reuland's statement to *New York* magazine addressed a matter of public concern." *Id.*

In reaching its conclusion, the panel majority in *Reuland* noted that its view was the majority view among circuits that had considered the relevance of a speaker's motive:

> Other circuits that have considered the role of motive on the question of public concern have almost uniformly agreed with our reading of *Connick* and found that motive is not dispositive. *See Tripp v. Cole*, 425 F.3d 5, 11 (1st Cir. 2005) ("Where a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives . . . . " (internal quotation marks and citation omitted)); *Markos v. City of Atlanta*, 364 F.3d 567, 572-73 (5th Cir. 2004) (noting that although motivation is often relevant, it is not "the new litmus test for the matter of public concern analysis, displacing the *Connick* factors"); *Anderer v. Jones*, 385 F.3d 1043, 1053 (7th Cir. 2004) ("We acknowledge that motive is relevant to the matter of public concern inquiry, though it is not dispositive." (internal quotations and alterations omitted)); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004) ("[W]e have held that motive should not be used as a litmus test for public concern; rather, content is the greatest single factor in the *Connick* inquiry." (internal quotations omitted)); *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) ("*Connick* indicates that the speaker's motive, while often a relevant part of the context of the speech, is not dispositive in determining whether a particular statement relates to a matter of public concern."); *Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997) ("[T]he motive which underlies an employee's statements is a relevant, but not necessarily dispositive factor in considering whether an employee's statements may be fairly characterized as relating to any matter of political, social, or other concern to the community." (citation and internal quotation marks omitted)); *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1997) ("[A]n employee's *motive* for speech, while not dispositive, is a factor that must be considered in determining whether speech is a matter of public concern."); *Barnard v. Jackson County*, 43 F.3d 1218, 1226 (8th Cir. 1995) ("Insofar as self-interest is found to have motivated public-employee speech, the employee's expression is entitled to less weight in the *Pickering* [*v. Bd. of Educ.*, 391 U.S. 563 (1968)] balance than speech on matter of public concern intended to serve the public interest." (internal quotations and alterations omitted)).

12

*Reuland*, 460 F.3d at 417-18. The panel majority went on to note that only one Circuit arguably

had expressed a different view:

> Only the Tenth Circuit has potentially treated motive as dispositive, although it has not
> explicitly so held. *See, e.g.*, *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990) ("In drawing
> the thin line between a public employee's speech which touches on matters of public
> concern, and speech from the same employee which only deals with personal
> employment matters, we have looked to the subjective intent of the speaker.").

*Id.* at 418.

Finally, the panel majority in *Reuland* addressed the statements in *Lewis* suggesting the centrality

of a speaker's motive in determining whether the speech constituted a matter of public concern, and

attempted to reconcile its holding with *Lewis*:

> In *Lewis v. Cowen*, we noted that, in determining whether an employee's speech addresses
> a matter of public concern, "the court should focus on the motive of the speaker and
> attempt to determine whether the speech was calculated to redress personal grievances
> or whether it had a broader public purpose." 165 F.3d 154, 163-64 (2d Cir. 1999).
> Nevertheless, consistent with our previous cases, we focused on private motives related
> to employment, stating that "speech on a purely private matter, such as an employee's
> dissatisfaction with the conditions of his employment, does not pertain to a matter of
> public concern." *Id.* at 164. None of these cases suggest that the speaker's motive *alone*
> is dispositive of the public concern issue, and this is especially true where this motive is
> not to address an employment grievance.

*Reuland*, 460 F.3d at 417.

Despite our holding in *Reuland* that a speaker's motive is not dispositive when a court considers

whether the speech at issue addresses a matter of public concern, our recent holding in *Ruotolo v. City of

New York*, 514 F.3d 184 (2d Cir. 2008) suggested otherwise. In *Ruotolo*, a retired police sergeant sued

the City of New York and various officials and members of the New York City Police Department,

alleging retaliation in violation of the First Amendment for a lawsuit he had filed. In assessing whether

Ruotolo's lawsuit addressed a matter of public concern, the *Ruotolo* panel reached back to our earlier

decision in *Lewis*:

13

> "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 and n. 7, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983)). *The heart of the matter* is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose." *Lewis*, 165 F.3d at 163-64.

*Ruotolo*, 514 F.3d at 189 (emphasis added). The Court then concluded that because "Ruotolo's lawsuit sought to redress his personal grievances[,] [i]t did not seek to advance a public purpose." *Id.*[7]

To the extent that our precedents have been less than clear, we reaffirm today our holding in *Reuland*: a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern. *See Reuland*, 460 F.3d at 415. As both the *Reuland* and *Cioffi* decisions make clear, our conclusion here is also compelled by the holding of the Supreme Court in *Connick*. *See id.* at 416 ("The facts of the Supreme Court's decision in *Connick* indicate that motive is not dispositive as to whether an employee's speech is a matter of public concern."); *Cioffi*, 444 F.3d at 165-66 (citing *Connick*, 461 U.S. at 148-49). In *Connick*, the Supreme Court concluded that part of the questionnaire addressed a matter of public concern despite the fact that the Assistant District Attorney's decision to circulate her questionnaire was motivated by her own employment grievances. *See Connick*, 461 U.S. at 148-49. As noted by our Court in *Reuland*, this reading of *Connick* has led almost every other court of appeals to conclude that a speaker's motive is not dispositive in assessing whether his or her speech addressed a matter of public concern. *See Reuland*, 460 F.3d at 417-18 ("Other circuits that have considered the role

---

[7] We note that the *Ruotolo* decision, 514 F.3d 184, does not cite, much less apply, our Court's prior decisions in *Cioffi*, 444 F.3d 158, and *Reuland*, 460 F.3d 409. Mindful that the law of the Circuit can be modified or overruled only by action of the *en banc* court, *see, e.g.*, *United States v. Brutus*, 505 F.3d 80, 87 n.5 (2d Cir. 2007) ("We recognize that the law of the circuit doctrine dictates that we are 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court.'" (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004))), we cannot conclude by its silence on these cases that the *Ruotolo* panel meant in any way to overturn or even narrow our prior holdings in *Cioffi* or *Reuland*.

14

of motive on the question of public concern have almost uniformly agreed with our reading of *Connick* and found that motive is not dispositive." (collecting cases)).

We note that this holding does not negate the fact that, as we stated in *Lewis*, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Lewis*, 165 F.3d at 164. An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking "upon matters only of personal interest." *Connick*, 461 U.S. at 147. We make clear today, however, that it does not follow that a person *motivated by* a personal grievance cannot be speaking on a matter of public concern.

In the case at hand, we conclude that the District Court erred in concluding that Sousa's speech did not address a matter of public concern because he was motivated by employment grievances. The District Court read our Court's precedents to stand for the proposition that "where the employee's private motives are expressed in the context of an employee grievance . . . the speech at issue does not address a matter of public concern," *Sousa*, 2007 WL 1100318, at *6, and cited our Court's opinion in *Reuland* for support. If anything, however, *Reuland* made plain that our Court has *not* consistently taken this view:

> Our previous cases suggesting that the speaker's motive might indicate that the speech is not on a matter of public concern have focused primarily on private motives related to employment grievances. *See, e.g., Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) ("Ezekwo was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor."); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060 (2d Cir. 1993) ("Although [plaintiff's] First Amendment interest in filing his short-lived personnel complaint would be weak if, as the trial record strongly suggests, he took that action solely to obtain additional towing referrals, the trial court did not err in ruling the personnel complaint did at least minimally touch upon a matter of public concern."); *Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) (noting that private motives such as "facing termination for personal consumption of marijuana" or "trying to evade or discredit a drug testing program" might mean that employee speech advocating the

15

legalization of marijuana was not protected).  In *Ezekwo*, *the only one of these cases to conclude the speech at issue was not a matter of public concern, we relied not only on the motive of the speaker, but on the content of the speech*, finding that both were related to personal grievances.  940 F.2d at 781.

*Reuland*, 460 F.3d at 417 (emphasis added).  Moreover, as noted above, the Court in *Reuland* emphasized that even though some earlier cases had indeed taken motive into account, particularly in the employment grievance context, "[n]one of these cases suggest that the speaker's motive *alone* is dispositive of the public concern issue[.]"  *Id.* (emphasis in the original).

In sum, we conclude that the District Court erred in stating as a general rule that "[t]here is no First Amendment protection for speech calculated to redress personal grievances in the employment context," *Sousa*, 2007 WL 1100318, at *7.  Whether or not speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record," *Connick*, 461 U.S. at 147-48, and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive.

Accordingly, we vacate the April 23, 2007 judgment of the District Court insofar as it granted defendants summary judgment on Sousa's First Amendment claim, and we remand the case for further proceedings.[8]

---

[8] We note that as part of the District Court's proceedings, it may wish to assume *arguendo* that Sousa's statements did touch on "a matter of public concern," and proceed straight to "*Pickering* balancing,"—that is, considering whether Sousa's "interest in free comment is outweighed by the State's interest in the efficiency of its public services." *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999) (citing *Pickering*, 391 U.S. at 572-73); *see also Blackman v. New York City Transit Auth.*, 491 F.3d 95, 100 n.5 (2d Cir. 2007) ("We pause to note that, in cases in which the 'matters of public concern' issue is close but the task of balancing interests does not appear to be a difficult one, it generally will be preferable for a district court to assume *arguendo* that the 'matters of public concern' requirement has been satisfied, and then proceed directly to the balancing of interests. *Cf. Locurto* [*v. Giuliani*], 447 F.3d [159,] 175 [2d Cir. 2006] ('Assuming, therefore, that the plaintiffs were speaking on a matter of public concern, we proceed to the second part of the *Pickering* framework.').  Such an approach would avoid the need for time-consuming remands, especially in cases in which *Pickering* balancing, though clearly favoring one party, cannot be done comfortably by an appellate court.").

16

**CONCLUSION**

For the reasons stated above, we reaffirm the holding of *Reuland*, rooted in the Supreme Court's decision in *Connick*, that "the speaker's motive, while one factor that may be considered, is not dispositive as to whether his speech addressed a matter of public concern." *Reuland*, 460 F.3d at 415. Accordingly, we conclude that the District Court erred in its determination in this case that Sousa's speech was not on "a matter of public concern" solely because Sousa was motivated by his employment grievances. We therefore vacate the April 23, 2007 judgment of the District Court insofar as it granted defendants summary judgment on Sousa's First Amendment claim, and we remand the cause for further proceedings consistent with this opinion.