10-3617-cv
Bearss v. Wilton

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand eleven.

Present:
      RALPH K. WINTER,
      ROBERT A. KATZMANN,
      RICHARD C. WESLEY,
                *Circuit Judges*.

_____

DEBRA BEARSS,

               *Plaintiff-Appellant*,

               - v. -                 No. 10-3617-cv

WENDY WILTON, Individually and in her capacity as
City Treasurer of the City of Rutland, CHRISTOPHER LOURAS,
Individually and in his capacity as Mayor of the City of Rutland,
CITY OF RUTLAND, VERMONT,

               *Defendants-Appellees*.

_____

For Plaintiff-Appellant:          PAUL S. KULIG, Kulig & Sullivan, P.C., Rutland, VT

For Defendants-Appellees:        KEVIN J. COYLE, McNeil, Leddy & Sheahan, PC,
                              Burlington, VT (John T. Leddy, McNeil, Leddy &

Sheahan, PC, Burlington, VT, James F. Carroll, English, Carroll & Boe, PC, Middlebury, VT, *on the brief*)

Appeal from the United States District Court for the District of Vermont (Conroy, *M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Debra Bearss appeals from a judgment, entered on August 10, 2010, by the United States District Court for the District of Vermont (Conroy, *M.J.*), granting Defendants-Appellees' motion for summary judgment and dismissing Bearss's claims arising under 42 U.S.C. § 1983 for violation of Bearss's rights under the First and Fourteenth Amendments. Having dismissed the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "We review de novo a district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party." *Sousa v. Roque*, 578 F.3d 164, 169 (2d Cir. 2009) (internal quotation marks omitted).

We turn first to Bearss's First Amendment retaliation claims. "To survive summary judgment on a section 1983 First Amendment retaliation claim a plaintiff must demonstrate that he engaged in protected speech, and that the speech was a substantial or motivating factor in an adverse decision taken by the defendant." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006). "Whether speech by a public employee is protected from retaliation

2

under the First Amendment begins with this question: 'whether the employee spoke as a citizen on a matter of public concern.'" *Huth v. Haslun*, 598 F.3d 70, 73 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "If a public employee speaks not as a citizen but instead pursuant to his or her 'official duties,' an employer's response to that speech does not violate the First Amendment." *Id.* at 74.

On appeal, Bearss argues that the district court erred in dismissing her claims of First Amendment retaliation based on two instances of allegedly protected speech: (1) statements published in a local newspaper rebutting allegations that former city officials had deleted public documents in violation of state law; and (2) testimony given by Bearss in July 2007 at a Board of Civil Authority ("BCA") hearing regarding Bearss's job performance in which she rebutted allegations that employee benefits had been improperly made by the former city treasurer.

The undisputed record demonstrates that, on both occasions, Bearss spoke as a public employee and not as a citizen on a matter of public concern, and thus these instances of speech were not protected. *See Weintraub v. Bd. of Educ.*, 593 F.3d 196, 200 (2d Cir. 2010) ("Regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.") (internal quotation marks omitted).

With respect to the newspaper statements, Bearss was quoted in the *Rutland Herald*:

> Debra Bearss, the city's information technology coordinator, said no public information was deleted from city computers and no one at City Hall did anything out of the ordinary to them.

3

Cassarino's computer, for example, appears to have been used only rarely, she said. His assistant, Jean Ross, who still works at City Hall "receives all the files in that office," Bearss said. "I don't think John used the computer very much."

[Former Assistant City Attorney Henry] Brislin had dozens of public files stored on his machine, and Bearss said she e-mailed all of them to city Legal Assistant Lisa Pearson before clearing out his electronic files . . . .

As for Wilkinson's computer, Bearss said she has never touched it. . . .

J.A. 26-27.

In finding that the speech was not entitled to the protection of the First Amendment, the district court noted that "Bearss was acting as an employee with first-hand knowledge of the City's computer use when she responded to the reporter's inquiries." J.A. 195. We agree. "[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203. Prior to the newspaper statements, Wilton had circulated a memorandum that stated that "any computer issues need to be addressed to Debra Bearss, IT Coordinator." J.A. 25. Bearss spoke to the newspaper as the "city's information technology coordinator" and, therefore, we conclude that her statements were "speech that owes its existence to a public employee's professional responsibilities." *Garcetti*, 547 U.S. at 421; *see also  Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) (summary order) (affirming summary judgment on the ground that the misconduct that plaintiffs identified was learned "only by virtue of their jobs as police officers"); *Foley v. Town of Randolph*, 598 F.3d 1, 7-8, 10 (1st Cir. 2010) (holding that fire chief's speech to press was "pursuant to official duties" because

4

under the circumstances it took on character of "official communications" and had "imprimatur of the Fire Department").

We turn next to Bearss's testimony at the 2007 BCA hearing. The district court found that Bearss testified predominantly about matters within the scope of her job duties, specifically relating to the defense of her job performance against Wilton's accusations of incompetence and inexperience. Bearss points to statements that she made concerning allegations that employee benefit determinations had been made in violation of City policy, rebutting them as "policy decisions" with which Bearss personally did not agree. Bearss argues that the statements addressed potential malfeasance by the former city treasurer and thus she spoke as a private citizen on a matter of public concern. Under those circumstances, she claims, her speech was protected by the First Amendment. *See, e.g.*, *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) ("Discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." (alteration and internal quotation marks omitted)). Nevertheless, the district court noted that Bearss's speech "was not intended to remedy working conditions for a group of City employees, and was not aimed at any alleged City-wide epidemic affecting many employees." J.A. 200; s*ee also* *Plofsky v. Giuliano*, 375 F. App'x 151, 153-54 (2d Cir. 2010) (summary order) (holding that complaints by a plaintiff and his lawyer about Connecticut State Ethics Commission disciplinary proceeding were "largely personal in nature" even though "contemporaneous newspaper reports suggested there was, in fact, some public interest in the statements made by plaintiff and his attorney").

5

Taking into account the "content, form, and context of a given statement, as revealed by the whole record," *Sousa*, 578 F.3d at 170 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)) (internal quotation mark omitted), we agree with the district court that the record supports the conclusion that Bearss's statements were motivated by personal interest in responding to criticism of her job performance and not motivated by a desire to "advance a public purpose," *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). Moreover, the absence of a citizen analogue further supports our conclusion that her speech was not made as a private citizen, but rather as a public employee. In *Weintraub*, this Court held that the "lodging of a union grievance is not a form or channel of discourse available to non-employee citizens." 593 F.3d at 204. Bearss's statements were made in a forum not available to citizens who not are not employees of the City of Rutland.

We turn next to Bearss's retaliation claim based on political association. To establish a First Amendment retaliation claim for political association, the plaintiff must show that she engaged in political association and that such conduct was the cause of defendants' retaliatory action. *See Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir. 1988). On appeal, Bearss argues that the record shows that soon after Bearss defended Wilkinson's actions, Wilton attempted to fire her. Moreover, Bearss emphasizes that while Wilton's firing decision was on appeal, Wilton made a statement on a local talk radio show that once Bearss had been terminated "the last of the political insiders" would be gone. Pl. Br. 47. The plaintiff thus claims that she "had a protected interest in making statements on matters of political significance without suffering retaliation on the basis that such statements made Bearss (in Wilton's eyes) a 'political insider.'" *Id.* at 48. Defendants argue that Bearss

6

has failed to show that her statements in defense of the former city treasurer were made for political reasons, but rather, such statements were made as a public employee in defense of her job, and thus, she was not engaged in political association protected by the First Amendment. We agree with defendants, for the reasons discussed above with respect to Bearss's First Amendment claims regarding her protected speech, that the record is insufficient to show that Bearss was engaged in protected political association when she spoke in defense of her former supervisor's decisionmaking. The evidence does not support Bearss's contention on appeal that Wilton's actions were based on any political association between Bearss and the former city treasurer.

We turn finally to Bearss's procedural due process claim relating to the 2008 BCA hearing. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* Such an employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546.

Bearss claims she was unlawfully deprived of her property interest in her position when, at the April 2008 hearing, the BCA did not permit her to present all the evidence regarding Wilton's allegedly retaliatory conduct. The district court held that defendants were entitled to summary judgment because "the undisputed facts reveal that neither party had any control or authority over the procedures followed at the April 2008 BCA hearing." J.A. 209.

7

It further found that all of the defendants were entitled to summary judgment because "the undisputed facts reveal that Bearss was afforded written notice of the charges, an explanation of the employer's evidence, and an opportunity to present her side of the story at the April 2008 BCA hearing." *Id.* A review of the transcript of the 2008 BCA hearing demonstrates that Bearss's argument is meritless: despite initial objections from the City's attorney, the Board granted Bearss's attorney ample opportunity to elicit testimony from Bearss until he determined that he had nothing more to ask. Bearss's attorney concluded by stating, "Nothing further." J.A. 77. Thus, the BCA did not deprive Bearss of the opportunity to fully present evidence of Wilton's allegedly retaliatory conduct.

We have considered Bearss's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8