08-2203-cv
Huth v. Haslun

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: June 17, 2009                                    Decided:  March 11, 2010)

Docket No. 08-2203-cv

FLORENCE E. HUTH,

                    *Plaintiff-Appellee*,

                    v.

DEBORAH HASLUN, CARLOS MILLAN, JOSEPH BLOOMER,
RAMESH MEHTA, and JONATHAN BARR,

                    *Defendants-Appellants*.


Before:  CABRANES and HALL, *Circuit Judges*, STEIN, *District Judge.**

Defendants-appellants appeal from an April 3, 2008 order of the United States District Court

for the Southern District of New York (Charles L. Brieant, Jr., *Judge*) denying their motion for summary

judgment raising the defense of qualified immunity.  Plaintiff claims that defendants, who are

employees of the New York State Thruway Authority, violated her rights under the First Amendment

to the Constitution by initiating disciplinary proceedings against her resulting in her demotion.  She also

asserts that, in doing so, defendants violated the First Amendment rights of her coworker.  We hold

that the conduct that resulted in plaintiff's demotion does not qualify as speech protected from

retaliation by the First Amendment under the framework set forth by the Supreme Court in *Garcetti v.*

---

* The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York,
sitting by designation.

*Ceballos*, 547 U.S. 410 (2006). We further hold that plaintiff cannot assert a claim on behalf of her coworker because that coworker suffered no infringement of her own constitutional rights. Accordingly, we reverse the order of the District Court.

JONATHAN LOVETT (Drita Nicaj, *on the brief*), Lovett & Gould, LLP, White Plains, NY, *for plaintiff-appellee*.

MONICA WAGNER, Assistant Solicitor General (Andrew M. Cuomo, Attorney General of the State of New York, *on the brief*, Barbara D. Underwood, Solicitor General, and Richard Dearing, Assistant Solicitor General, *of counsel*), Office of the Attorney General of the State of New York, New York, NY, *for defendants-appellants*.

JOSÉ A. CABRANES, *Circuit Judge*:

The principal questions presented in this appeal are: (1) whether a public employee engages in speech protected from retaliation by the First Amendment by relaying a subordinate's concerns to her supervisor and by filing a lawsuit; and (2) whether a plaintiff can have third-party standing to assert claims on behalf of an individual who has suffered no injury.

Defendants-appellants Deborah Haslun, Carlos Millan, Joseph Bloomer, Ramesh Mehta, and Jonathan Barr (collectively, "defendants") appeal from an April 3, 2008 order of the United States District Court for the Southern District of New York (Charles L. Brieant, Jr., *Judge*) denying their motion for summary judgment raising the defense of qualified immunity. The underlying action was brought pursuant to 42 U.S.C. § 1983 by plaintiff-appellee Florence Huth ("plaintiff" or "Huth"), an employee of the New York State Thruway Authority ("Thruway Authority"). Plaintiff claims that defendants, who are also employees of the Thruway Authority, violated her rights under the First Amendment to the Constitution by initiating disciplinary proceedings against her, which resulted in her demotion. She also asserts that, in doing so, defendants violated the First Amendment rights of her

coworker. We hold that the conduct that resulted in plaintiff's demotion does not qualify as speech protected from retaliation by the First Amendment under the framework set forth by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). We further hold that plaintiff cannot assert a claim on behalf of her coworker because the coworker's own constitutional rights were not violated. Accordingly, we reverse the order of the District Court.

## BACKGROUND

On April 26, 2005, Huth met with Dorothy Archer ("Archer"), one of Huth's subordinates within the Thruway Authority. Archer told Huth that certain of her coworkers and supervisors were selling bootleg DVDs on Thruway Authority premises. Huth alleges that Archer also told her that a supervisor was giving "special duties" to an African-American coworker, which Huth understood to be a complaint by Archer about reverse discrimination. Huth conveyed these concerns to her supervisor, defendant Bloomer, during daily meetings with him. Bloomer responded that he was already aware of Archer's concerns.

At some point on April 26, 2005, Huth drove in a Thruway Authority vehicle to a Thruway Authority facility in Newburgh, New York. Archer accompanied Huth on this trip. Huth stopped at several toll plazas along the way. During those stops Archer left the car and solicited and obtained Thruway Authority employees' signatures on petitions to nominate Archer for a union office. Huth maintains that Archer did not tell her that she was soliciting signatures during the stops.

Huth alleges that on April 29, 2005, Bloomer advised Huth and Archer that they were both under investigation for their activities on April 26, 2005, as Thruway Authority policy prohibits management personnel, such as Huth, from being involved in union elections and prohibits the use of Thruway Authority vehicles in connection with union elections. After a hearing officer initially cleared Huth of any wrongdoing, defendant Barr, the Thruway Authority's Director of Administrative Services,

3

informed Huth by letter on April 11, 2007 that she had been found "guilty of misconduct and/or incompetence for violating Administrative Services Bulletin 2004-16" on Union Elections and that, as a result, Huth was being demoted to her last permanently-held, lower-level position. *Huth v. Haslun*, 628 F. Supp. 2d 425, 428 (S.D.N.Y. 2008).

On January 9, 2007, after disciplinary proceedings had begun, but before the Thruway Authority had decided to demote her, Huth commenced the present action. Specifically, Huth sued defendants for compensatory and punitive damages pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that they (1) had violated her rights under the First Amendment by disciplining her in retaliation for reporting Archer's concerns about other Thruway Authority employees; and (2) had violated, "on a third-party standing basis," J.A. 232, her rights under the First Amendment by disciplining her in retaliation for Archer's expression of her concerns and for Archer's union-related activities.[1] After Huth was demoted, she filed an amended complaint, which expanded her first claim by alleging not only that she was retaliated against for reporting Archer's concerns, but also for filing the instant action.

On January 11, 2008, defendants moved for summary judgment on the basis that they were entitled to qualified immunity because, based on undisputed facts, they did not violate Huth's rights under the First Amendment. Defendants further argued that Huth lacked standing to bring third-party claims on behalf of Archer. In an Order dated April 3, 2008, the District Court denied defendants' motion. *Huth*, 628 F. Supp. 2d at 432. Specifically, the District Court concluded that Huth's report of Archer's concerns, as well as the filing of this present action, qualified as protected speech under the

---

[1] Huth also alleged that defendants had violated her rights under the Equal Protection Clause by selectively "prosecuting" her, but not others, for violating the Thruway Authority's policy regarding union elections. We note that she has withdrawn her equal protection claim in light of the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 128 S. Ct. 2146, 2148-49 (2008), and this Court's decision in *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008) (finding that, in light of *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability"). Appellee's Br. 1 n.2. Accordingly, we do not address this claim.

4

First Amendment. *Id.* at 429. The District Court further determined that Huth had third-party standing to raise First Amendment claims on behalf of Archer. *Id.* at 430. Defendants filed a timely notice of appeal.

## DISCUSSION

At the outset we note that "[b]ecause the denial of a motion for summary judgment is not a final judgment, it is generally not immediately appealable." *Walczyk v. Rio*, 496 F.3d 139, 153 (2d Cir. 2007). However, there is an exception to this general rule "when the denied motion was based on a claim of immunity, at least to the extent the immunity claim presents a 'purely legal question.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)); *see also O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 38 (2d Cir. 2003) (observing that "[u]nder the collateral order doctrine . . . the denial of a qualified-immunity-based motion for summary judgment is immediately appealable to the extent that the district court has denied the motion as a matter of law, although not to the extent that the defense turns solely on the resolution of questions of fact"). Here, the District Court's denial of defendants' motion for summary judgment turned on questions of law, and accordingly we have jurisdiction to review the matter.

We review *de novo* a district court's denial of summary judgment based on a defense of qualified immunity, *see Papineau v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006), and, of course, summary judgment is appropriate only if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).

To overcome the defense of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that that constitutional right was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."). The Supreme Court

5

recently has clarified that courts retain discretion to decide which prong of this analysis should be addressed first in a given case, although it emphasized that it is "often beneficial" to first decide whether there has been a constitutional violation. *Id.* at 818 (holding that "while the sequence set forth [in *Saucier v. Katz*, 533 U.S. 194 (2001),] is often appropriate, it should no longer be regarded as mandatory"). We conclude upon a review of the record that Huth cannot show that she suffered a violation of a constitutional right and, therefore, we need not proceed beyond the first prong of this inquiry.

**I.      Huth's Speech Was Not Protected from Retaliation by the First Amendment**

We begin with Huth's first claim—that defendants violated her rights under the First Amendment by disciplining her in retaliation for (1) reporting Archer's concerns about other Thruway Authority employees and (2) initiating the present action. Whether speech by a public employee is protected from retaliation under the First Amendment begins with this question: "whether the employee spoke as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418. If a public employee speaks not as a citizen but instead pursuant to his or her "official duties," an employer's response to that speech does not violate the First Amendment. *Id.* at 421, 424. We recently held in *Weintraub v. Board of Education* that "speech can be 'pursuant to' a public employee's official job duties even though it was not required by, or included in, the employee's job description, or in response to a request by the employer." 593 F.3d 196, 203 (2d Cir. 2010) (holding that a teacher's union grievance about school administrators' failure to discipline a disruptive student was speech made pursuant to an official duty). We also held that the public employee in that case spoke pursuant to his official duties because his speech was "part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher." *Id.* (internal citation and quotation marks and omitted).

*Garcetti*'s second requirement is that, to be protected from retaliation by the First Amendment, a

public employee's speech must be "on a matter of public concern." 547 U.S. at 418. *But see Connick v. Myers*, 461 U.S. 138, 147 (1983) (explaining that, although a public employer's retaliation for "speech on private matters" does not violate the First Amendment, speech "not touching upon a matter of public concern [is not] totally beyond the protection of the First Amendment"). We recently clarified that "[w]hether or not speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record, and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (internal citation and quotation marks omitted). In doing so we rejected a categorical approach that places all speech aimed at redressing personal grievances in the employment context beyond the scope of the First Amendment. *See id.*

Here the record shows that Huth passed along Archer's concerns about the actions of certain Thruway Authority employees to the head of Huth's division and that she did so at daily meetings when they discussed the employees in their division. *See* J.A. 330. We have no difficulty concluding that such speech was made not as a "citizen" but, rather, pursuant to Huth's official duties as a Thruway Authority employee and supervisor. *See Garcetti*, 547 U.S. at 422 (holding that, by drafting a memorandum to his supervisors expressing concern about a particular case, a supervising district attorney acted pursuant to his official duties by "perform[ing] the tasks he was paid to perform"). We therefore hold that Huth's conduct did not qualify as speech protected from retaliation by the First Amendment. As a result, Huth's claim that defendants retaliated against her for voicing concerns about the conduct of coworkers is without merit.

The record also makes plain that Huth's present lawsuit, asserting claims for monetary and punitive damages, does not qualify as speech "on a matter of public concern." *See id.* at 418. Huth's original complaint, which she contends was protected speech and the basis for defendants' further

7

retaliation, alleged only that defendants retaliated against her for specific statements she made to her supervisor and for the union activities of Archer. Much like other public employee speech that we have held not to be protected from retaliation by the First Amendment, Huth's lawsuit was "personal in nature and generally related to her own situation." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (quoting *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 776 (2d Cir. 1991)). Significantly, there is no suggestion in this record that she "wanted to debate issues of . . . discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." *Id.* (internal quotation marks omitted) (holding that an employee's complaints about sex discrimination were not speech on a matter of public concern) (relying on *Yatvin v. Madison Metro Sch. Dist.*, 840 F.2d 412, 420 (7th Cir. 1988)); *cf. Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (finding that complaints did qualify as speech on a matter of public concern because they concerned "discrimination problems generally and were not limited to instances affecting only [plaintiff]"). Considering the record as a whole, we conclude that Huth's original complaint was not speech on a matter of public concern and, therefore, was not protected from retaliation by the First Amendment. As a result, Huth's claim that defendants retaliated against her for filing this lawsuit is without merit.

## II.     Huth Lacks Third-Party Standing to Assert a Claim on Behalf of Archer

Turning to Huth's final claim—that defendants retaliated against her for *Archer's* exercise of her First Amendment rights—we note that we have previously held that "[a] plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) some hindrance to the third party's ability to protect his or her own interests." *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003) (internal citations and

quotation marks omitted). Implicit in *Camacho*'s formulation is the requirement that the third party—here Archer—*has a constitutional claim*. *See id.* In this case, Huth does not allege that Archer suffered any retaliation for her activities, or more broadly, that Archer's constitutional rights were violated in any way. Indeed, she concedes that Archer could not have brought a claim herself "because she did not suffer any injury." Appellee's Br. 19; *cf. Camacho*, 317 F.3d at 160 (noting that the third party "clearly suffered injury in fact"). Accordingly, Huth cannot raise a claim based on Archer's First Amendment rights under the doctrine of third-party standing.

We therefore conclude that Huth cannot show that she suffered a violation of a constitutional right, and we reverse the District Court's denial of summary judgment on the issue of qualified immunity.

## CONCLUSION

To summarize, we hold:

(1) that plaintiff did not engage in speech protected from retaliation by the First Amendment by relaying the concerns of a subordinate to her supervisor or by filing this lawsuit; and

(2) that plaintiff does not have standing to assert claims on behalf of a third party who has suffered no injury.

For the foregoing reasons, the April 3, 2008 order of the District Court is **REVERSED**. Judgment shall enter for the defendants-appellants.