12-1173-cv
Golodner v. Berliner, *et al.*

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term 2012

(Argued: January 17, 2013   Decided: October 27, 2014)

Docket No. 12-1173-cv
_____

DANIEL GOLODNER and SECURITY TECHNOLOGY SYSTEMS LLC,

*Plaintiffs-Appellees*,

-*v.*-

MARTIN BERLINER and ROBERT MYERS,

*Defendants-Appellants*,

CITY OF NEW LONDON,

*Defendant*.
_____

Before:  STRAUB, HALL, AND DRONEY, *Circuit Judges*.
_____

Appeal from the judgment of the United States District Court for the District of Connecticut denying defendants' motion for summary judgment asserting the defense of qualified immunity. The district court held that the defendants were not entitled to qualified immunity on plaintiffs' First Amendment retaliation claims because the speech at issue—a lawsuit filed by one of the plaintiffs alleging, *inter alia*, police misconduct—was on a matter of public concern and the right to engage in that form of speech was clearly established at the time of the alleged retaliatory conduct. We AFFIRM the decision of the district court and REMAND the case for continued proceedings.

_____

Michael J. Rose (Melinda A. Powell, Rachel L. Ginsburg, *on the brief*), Rose Kallor, LLP, Hartford, Connecticut, *for Defendants-Appellants*.

John R. Williams, John R. Williams and Associates, LLC, New Haven, Connecticut, *for Plaintiffs-Appellees*.

———————————————

HALL, *Circuit Judge*:

Plaintiffs-appellees Daniel Golodner and Security Technology Systems ("STS") brought suit under 42 U.S.C. § 1983 alleging that the City of New London ("the City") and two City officials, defendants-appellants Martin Berliner and Robert Myers ("Appellants"), retaliated against Golodner for exercising his rights under the First Amendment when he filed an earlier lawsuit against the City and several of its police officers ("*Golodner I*"). Appellants sought summary judgment on the basis of qualified immunity. The United States District Court for the District of Connecticut (Underhill, *J.*) denied the motion, holding that the complaint in *Golodner I* constituted speech on a matter of public concern protected under the First Amendment, and that Golodner's right to engage in this form of speech was clearly established at the time of the alleged retaliation. For the reasons stated herein, we affirm the district court's denial of summary judgment and remand this case for continued proceedings.

## BACKGROUND

In August 2000, Golodner and Timothy Ackert founded STS, a limited liability company that offers security services. In 2002, STS entered into a three-year contract with the City to provide various services to several buildings. The contract expired in April 2005. At that time, the City notified Golodner that it would continue to use STS's services. The parties characterized their relationship after the contract expired as "ad hoc," with services provided on an as-needed basis. Defendants' Rule 56.1 Statement of Undisputed Facts, Golodner v. City of New London, No. 3:10-cv-654 (D. Conn. Oct. 13, 2011), ECF No. 30-1.

2

In August 2008, Golodner filed his complaint in *Golodner I* in the United States District Court for the District of Connecticut against the City and seven of its police officers. The claims in *Golodner I* arose from disputes that Golodner had with his neighbors and the fact that he was arrested multiple times as a result of those disputes. Golodner claimed that because those arrests were not supported by probable cause, the officers had "denied him his right to be free from equal protection of the law [sic], his right to be free to petition for redress of grievances and his right to be free from false arrest in violation of" the Constitution. Complaint ¶ 1, Golodner v. City of New London, No. 3:08-cv-1319 (D. Conn. Aug. 29, 2008), ECF No. 1. His complaint identified the arresting officers and the individual instances that gave rise to the alleged constitutional violations. In effect, Golodner asserted that two factors motivated the arresting officers: a constitutionally impermissible policy promulgated by the City and malice directed at him personally.

As to the first factor, Golodner alleged that the police officers were carrying out an unconstitutional policy of arresting sets of cross-complaining witnesses ("dual-arrest policy"). Paragraph 18 of the *Golodner I* complaint states:

> Upon information and belief, the New London Police Department maintains a community policing program. As part of this program, the department instructs its officers to maintain a visible role in the community. Officers are also trained that in the context of neighbor disputes officers are as a matter of course to arrest both the complaining witness and the person against whom a complaint is made when charges are mere misdemeanors or so-called hate crimes. This policy is designed to deter citizens from making complaints about one another so as to avoid the time and expense of processing minor criminal complaints.

*Id.* ¶ 18. The complaint contains two additional references to this policy. In paragraph 20, Golodner alleges that as a result of the dual-arrest policy, on occasions when his complaints about his neighbors "could not be ignored," he was arrested "each and every time" the police

3

"arrested a neighbor as a result of [his] complaint." *Id.* ¶ 20. In paragraph 28, he alleges that "[t]he City's policy of arresting both the complaining witness and the person complained about in the context of a neighborhood dispute results in a denial of equal protection of the law." *Id.* ¶ 28.

Golodner's theory based on the second alleged motivating factor was the fact that he had previously "made complaints about police misconduct to the New London Police Department." *Id.* ¶ 14. Golodner claimed that because the officers "harbored actual malice against" him and did not "want[] to have anything to do with him," they disregarded his complaints concerning disputes he had with his neighbors, *id.* ¶ 19, and further because the officers "knew that [he] had previously complained about police misconduct to their Superiors at the New London Police Department, [they were] inspired by a malicious intent to retaliate against [him] for having complained against a brother officer." *Id.* ¶ 27. He asserted that his arrests based on this motive were unsupported by probable cause. *Id.* ¶¶ 17; 22-26.

In *Golodner I*, Golodner sought, *inter alia*, compensation for the emotional distress suffered, loss of work time, expense of hiring an attorney to defend against the arrests, and "the loss of those rights guaranteed under the First, Fourth and Fourteenth Amendments." *Id*. ¶ 29. He did not seek any form of injunctive relief.

The City's Attorney notified the City Council and the City Manager, Martin Berliner, of the *Golodner I* lawsuit in October 2008. In 2009, while *Golodner I* was proceeding, Berliner and Robert Myers, the City's Interim Director of Public Works, considered other security system providers to handle the systems in the City's buildings. Myers informed Golodner in July or August of 2009 that the City was evaluating bids from other vendors and requested a detailed accounting of the services STS provided as well as the cost of those services. Golodner supplied

4

Myers with the requested information including an addendum that set out a bid for the total cost of proposed services. Three other companies submitted bids. Myers ultimately awarded the contract to Integrated Security Solutions, due in part to the fact that it was the lowest overall bidder. In November 2009, Myers informed Golodner that the City would no longer be using STS as its security system provider.

In April 2010, Golodner filed his complaint in this case alleging, *inter alia*, that the individual defendants had retaliated against him in violation of the First Amendment.[1] Golodner asserts that the defendants' solicitation of bids, termination of STS as the City's security service provider, and decision to award the contract to his competitor were done in retaliation for his having filed *Golodner I*. In October 2011, Berliner and Myers moved for summary judgment on the basis of qualified immunity, arguing principally that because the speech embodied in *Golodner I* did not implicate a matter of public concern, it is not protected by the First Amendment. The district court denied the motion on the record during a motion hearing and the individual defendants timely filed this interlocutory appeal.

## DISCUSSION

Berliner and Myers contend they are immune from suit because the basis of their alleged retaliation, the *Golodner I* lawsuit, does not constitute speech on a matter of public concern by an employee and therefore is not subject to First Amendment protection. In the alternative, they argue that should we find the speech to be protected under the First Amendment, the basis in

---

[1]     Golodner's complaint in this case also included claims alleging violations of his equal protection and due process rights under the Fourteenth Amendment, which the district court dismissed on summary judgment. Transcript of Motion Hearing at 25-27, Golodner v. City of New London, No. 3:10-cv-654 (D. Conn. Jan. 23, 2012), ECF No. 45. That ruling is not within the scope of this interlocutory appeal.

case law for that determination was not clearly established at the time of the alleged retaliatory conduct.

We review *de novo* a decision by a district court to deny summary judgment on the basis that a public official is not entitled to qualified immunity. *Faghri v. Univ. of Conn.*, 621 F.3d 92, 96 (2d Cir. 2010); *see also Moore v. Andreno*, 505 F.3d 203, 208 (2d Cir. 2007). In an interlocutory appeal challenging a district court's determination that defendants are not entitled to qualified immunity, we have jurisdiction to decide the appeal "to the extent that [the decision] turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Locurto v. Safir*, 264 F.3d 154, 162 (2d Cir. 2001) ("A denial by a district court of a claim of qualified immunity—to the extent that it turns on an issue of law—is a collateral order subject to immediate appeal."). We are without jurisdiction to review a denial of a claim of qualified immunity that turns on disputed issues of fact, *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995), and must assume "all factual disputes in favor of the non-movant," *Ross v. Breslin*, 693 F.3d 300, 302 (2d Cir. 2012).

Our analysis of this issue is guided by two questions: first, whether "the facts show that the [defendants'] conduct violated plaintiff[s'] constitutional rights," and second, whether the right was "clearly established at the time of the defendant[s'] actions." *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013); *see also Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (holding that state officials do not assume "civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (internal quotation marks omitted)). If we answer either question in the negative, qualified immunity attaches. We may address these questions in either order, *Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (holding

that courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first), and begin here by determining whether, under the facts as alleged by Golodner,[2] the individual defendants' conduct violated a constitutional right.

As a threshold matter, we must identify the universe of facts available to us in our inquiry concerning whether the First Amendment applies to the employee speech[3] at issue. The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). In *Connick v. Myers*, the Supreme Court clarified that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. 138, 147-48 (1983). *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008); *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999); *see also Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014). The speaker's motive is a factor to consider but "is not dispositive in determining whether his or her speech addresses a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009) (citing *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006)).

The basis for the defendants' argument that *Golodner I* did not address a matter of public concern is their equating the term "whole record" as used in *Connick* with the full record, including the final disposition of *Golodner I*, the case that served as a vehicle for and constituted

---

[2]    We assume that both defendants' had full knowledge of the *Golodner I* complaint and that they acted in retaliation, as alleged by Golodner.

[3]    We consider government contractors, such as Golodner and STS, as equivalent to public employees for purposes of determining whether the speech at issue was protected. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993). Golodner does not contest being characterized as a public employee for those purposes. *See* Appellee's Br. 14-16 (advancing an employee speech argument based heavily on *Sousa v. Roque*, 578 F.3d 164 (2d Cir. 2009)). Employee lawsuits constitute a form of speech and as such are subject to the analysis detailed herein. *See, e.g.*, *Huth v. Haslun*, 598 F.3d 70, 73-75 (2d Cir. 2010); *Ruotolo v. City of New York*, 514 F.3d 184, 188-90 (2d Cir. 2008).

the speech now at issue.[4] Specifically, defendants argue that *Connick* and its progeny require that we not limit our review to the *Golodner I* complaint but instead view the entire record of that litigation, including Golodner's opposition to the motion for summary judgment and this Court's analysis in its summary order affirming the district court's judgment dismissing the case. Defendants contend that these post-complaint filings and court decisions, which do not mention the dual-arrest policy, demonstrate that Golodner's motive was personal rather than public in nature. The defendants' position, however, is untenable. The defendants' 2009 solicitation and selection of an alternative security service provider are the actions Golodner claims are retaliatory. When those actions occurred in 2009, the complaint in *Golodner I* was the only substantive expression that Golodner had filed in that lawsuit. Put another way, the complaint constituted the only "speech" that had been uttered at the time of the government actions. Neither Golodner's response to the summary judgment motion nor, certainly, this Court's summary order affirming the dismissal of *Golodner I* was in existence. The practical effect of adopting defendants' position, therefore, would be to impute to government actors—retroactively— knowledge of developments bearing on the characterization of speech that postdate the actors' alleged retaliation. Neither the law nor common sense supports such an approach, particularly when evaluating speech in the context of qualified immunity. None of the cases defendants cite extends *Connick*'s "whole record" review to materials submitted or speech uttered after the

---

[4] The *Golodner I* complaint was filed in 2008, and the defendants in that case filed a motion for summary judgment in 2010. Golodner filed a response opposing the motion in May 2010. Relevant to the issue on appeal here is the fact that Golodner's opposition to the motion is devoid of any mention of the City's dual-arrest policy alleged in the complaint. Brief in Opposition to Defendants' Motion for Summary Judgment 1-6, No. 3:08-cv-1319 (D. Conn. May 12, 2010), ECF No. 40. Opposing summary judgment in *Golodner I*, Golodner argues only that the officers lacked probable cause for each arrest, not that these arrests occurred pursuant to some City policy. *Id.* The district court granted summary judgment in favor of the defendants, dismissing *Golodner I* in its entirety. *Golodner v. City of New London*, No. 3:08-cv-1319, 2010 WL 3522489 (D. Conn. Sept. 1, 2010). This Court affirmed the district court's judgment by summary order in October 2011. *Golodner v. City of New London*, 443 F. App'x 622 (2d Cir. 2011).

alleged retaliatory action, either explicitly or implicitly. *See Connick*, 461 U.S. 138; *Ruotolo*, 514 F.3d 184; *Lewis*, 165 F.3d 154. Nor do they interpret "whole record" to include portions of the district court record for a lawsuit that constitutes the speech at the heart of a retaliation claim temporally disconnected from and not limited by the occurrence of the alleged retaliatory acts.

By its very nature, qualified immunity hinges on a snapshot of the factual and legal circumstances at the time of the alleged violation. While this temporal element is most commonly raised in the context of the legal, or "clearly established," prong, *see, e.g., Nagle v. Marron*, 663 F.3d 100, 114-15 (2d Cir. 2011), the unique circumstances of this case require us to apply a similar principle when analyzing the factual prong in order to avoid a result that is both nonsensical and contrary to the basic underpinnings of qualified immunity. Courts properly determine whether the speech at issue touches on a matter of public concern by reviewing only the speech cognizable by the alleged offenders *prior to and at the moment of the alleged violation.* Insofar as the defendants attempt to rely upon subsequent litigation developments in *Golodner I*, those circumstances—and any potential resolution of the claims in that suit—had yet to occur when the defendants opted to consider and choose a different security services provider. Our review must be limited, therefore, to Golodner's speech at the time Martin and Berliner acted in 2009: the *Golodner I* complaint.

Our resolution of the qualified immunity issue thus hinges on whether the *Golodner I* complaint addresses a matter of public concern or is merely "related to personal grievances," *Reuland*, 460 F.3d at 417, which is a question of law for the court to decide in light of the content, form, and context of a given statement, *Ruotolo*, 514 F.3d at 189. Generally speaking, a matter of public concern "relates to any matter of political, social, or other concern to the community." *Sousa*, 578 F.3d at 173 (quoting *Connick*, 461 U.S. at 146 (internal brackets

9

omitted)); *see also Lane*, 134 S. Ct. at 2380. In examining whether speech is on a matter of

public concern, we consider the motive of the speaker, *Reuland*, 460 F.3d at 415, cognizant that

"speech on a purely private matter . . . does not pertain to a matter of public concern" and,

conversely, that an individual motivated by a personal grievance can simultaneously speak on a

matter affecting the public at large, *Sousa*, 578 F.3d at 174. In that vein, we have held that

matters implicate the public interest when the plaintiff "wanted to debate issues of

discrimination, that [the plaintiff's] suit sought relief against pervasive or systemic misconduct

by a public agency or public officials, or that [the plaintiff's] suit was part of an overall effort to

correct allegedly unlawful practices or bring them to public attention." *Huth v. Haslun*, 598 F.3d

70, 75 (2d Cir. 2010) (internal citation, quotation marks, and ellipses omitted).

The defendants contend that the *Golodner I* complaint does not raise a matter of public

concern, citing *Ruotolo*, 514 F.3d 184, another case in which the plaintiff's speech took the form

of a lawsuit. In *Ruotolo* we characterized the specific speech at the heart of the plaintiff's

retaliation claim as bearing "upon the circumstances and perquisites of his employment, such as

reassignment, transfer, time off, and discipline." *Id.* at 190. Looking to the complaint in the

previous lawsuit, we determined that it enumerated "adverse career, financial and emotional

effects [the plaintiff] suffered personally," and that "[t]he relief sought is also almost entirely

personal to [the plaintiff], including compensatory damages and an injunction relating to [the

plaintiff's] employment records." *Id.* Because those issues inherently constituted "personal

grievances," we concluded that they did not rise to the level of public concern. *Id.* at 189. In this

type of case, our discussion of what constitutes "speech on a purely private matter," *Lewis*, 165

F.3d at 164, has always been closely tethered to an individual employee's conditions of

10

employment.[5] In *Ruotolo*, we stated that a "generalized public interest in the fair or proper treatment of public employees is not enough" to transform a personal grievance related to the conditions of one's employment into a matter of public concern. 514 F.3d at 190. Speech that, at its heart, is limited to such grievances does not implicate the First Amendment. Put simply, the "First Amendment does not protect all private ventings of disgruntled public employees." *Singer v. Ferro*, 711 F.3d 334, 340 (2d Cir. 2013).

By contrast, Golodner's speech in the *Golodner I* complaint is of a fundamentally different nature. It is wholly unrelated to any personal grievances as to the conditions of Golodner's employment. Nor has it anything to do with STS's or Golodner's contractual relationship with the City. Rather, the *Golodner I* complaint represents Golodner's attempt to vindicate his constitutional rights under the Fourth and Fourteenth Amendments in the face of alleged police misconduct directed against him as a private citizen.

As to the claims in the *Golodner I* complaint regarding the dual-arrest policy, it is axiomatic that misconduct within a police department implicates a matter of public concern, especially when it is traceable to potentially unconstitutional policies. *Cf. Huth*, 598 F.3d at 74-75; *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). Even were we to overlook the allegations related to the alleged dual-arrest policy, we would still be required to consider the second theory under which Golodner alleges his rights were violated: the officers in question acted with

---

[5]     *See, e.g.*, *Singer v. Ferro*, 711 F.3d 334, 340 (2d Cir. 2013) (stating that the corrupt practices plaintiff claims were the subject of his speech, including "payroll discrepancies, promotions, discipline" were all "employment-related matters," and that the court "do[es] not think that the public has a substantial interest in minor payroll discrepancies amongst corrections department staff, an isolated promotion to middle management, an arrest sixteen years prior, or rumors of womanizing"); *Reuland*, 460 F.3d at 417 ("Our previous cases suggesting that the speaker's motive might indicate that the speech is not on a matter of public concern have focused primarily on private motives related to employment grievances."); *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (holding that the plaintiff's "statements did not address matters of public concern" because her "complaints were personal in nature and generally related to her own situation within the HHC residency program," including "her own reputation and individual development as a doctor").

11

"malicious intent to retaliate against [him] for having complained against a brother officer."
Complaint ¶ 27, Golodner v. City of New London, No. 3:08-cv-1319 (D. Conn. Aug. 29, 2008),
ECF No. 1. In similar instances we have recognized that exposure "of official misconduct,
especially within [a] police department, is generally of great consequence to the public." *Jackler
v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (internal citation omitted); *cf. Lane*, 134 S. Ct. at
2379-80 (holding that testimony given under oath regarding a public corruption scandal raises a
matter of public concern that strikes at the heart of the protections the First Amendment sought
to safeguard). Both the dual-arrest policy and malicious intent theories of liability alleged in the
*Golodner I* complaint incontrovertibly implicate police misconduct that raises serious
constitutional concerns, and are, therefore, clearly matters of public concern.

We disagree, furthermore, with defendants' argument that the personal nature of
Golodner's request for relief requires the conclusion that he was in fact merely raising private
concerns. In *Ruotolo* we emphasized the personal nature of the relief the plaintiff in that case
sought, holding that because "Ruotolo's lawsuit concerns essentially personal grievances and the
relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern." 514
F.3d at 190. Motive, nonetheless, as demonstrated through a complaint's prayer for relief, "is not
dispositive in determining whether [a plaintiff's] speech addresses a matter of public concern,"
especially "*where this motive is not to address an employment grievance*." *Sousa*, 578 F.3d at
173 (emphasis added). Clearly, *Golodner I* did not address mere employment grievances at all.
In light of the constitutional implications of the matters of public concern raised in the
*Golodner I* complaint, we do not assign any significant weight to the specific prayer for relief as
a proxy for Golodner's motive. Examining the nature of the underlying claims in the *Golodner I*

12

complaint, we are convinced that Golodner raised issues that extend well beyond mere personal grievances and into the realm of public concern.

Finally, we must determine if the constitutional right at issue "was clearly established at the time of the alleged violation." *Huth*, 598 F.3d at 73 (citing *Pearson*, 555 U.S. at 232). While the parties do not address this second half of the qualified immunity analysis in any helpful way and the district court issued its ruling from the bench without identifying the sources for its conclusions, we cannot complete our analysis without resolving this critical question. *See Elder v. Holloway*, 510 U.S. 510, 512 (1994) (holding "that appellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by, the district court"). "A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006) (citing *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)).

Few issues related to qualified immunity have caused more ink to be spilled than whether a particular right has been clearly established, mainly because courts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citing the "chronic difficulty of articulating the right at issue with the appropriate specificity" (internal citations and quotation marks omitted)). In a sense, we must apply the Goldilocks principle. If the right is defined too narrowly based on the exact factual scenario presented, government actors will invariably receive qualified immunity. If, on the other hand, the right is defined too broadly, the entire second prong of qualified immunity analysis will

13

be subsumed by the first and immunity will be available rarely, if ever. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." (internal citations omitted)). Since neither result maintains the delicate balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties" that lies at the heart of qualified immunity, *Davis v. Scherer*, 468 U.S. 183, 195 (1984), we must chart a middle course. Our definition must be "particularized" in the sense that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citations omitted). Once we identify the right at issue we look to whether the Supreme Court or this Court had articulated that right with adequate specificity at the time of the retaliatory actions. *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). "We do not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083.

Here, the determinative question is whether Berliner and Myers could reasonably have believed—based on the law as it existed in the second half of 2009—that the First Amendment did not prevent them from discontinuing the City's existing relationship with an independent contractor on account of a lawsuit the contractor filed against the City alleging an

14

unconstitutional dual-arrest policy and police misconduct.[6] As an initial matter, "the First Amendment right of public employees to be free from retaliation for speech on matters of public concern" is beyond debate. *Reuland*, 460 F.3d at 419-20 (noting "previous cases have recognized and defined the First Amendment right of public employees to be free from retaliation for speech on matters of public concern with reasonable clarity"). Next, as discussed at length above, the speech at issue has nothing to do with personal employee grievances related to Golodner's conditions of employment and extends well into the realm of public concern. This conclusion is firmly supported by the relevant jurisprudence in place in 2009. *See, e.g.*, *Ruotolo*, 514 F.3d at 189; *Skehan*, 465 F.3d at 106.

Next, although the right at issue is most often raised in the context of a government official firing an employee in retaliation for his or her speech, any attempt to distinguish the case on appeal from those cases based on Golodner's status as a contractor is vitiated by the Supreme Court's 1996 decision in *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996). In *Umbehr*, the Court considered "whether, and to what extent, the First Amendment restricts the freedom of federal, state, or local governments to terminate their relationships with independent contractors because of the contractors' speech." *Id*. The Court declined to recognize any "difference of constitutional magnitude . . . between independent contractors and employees in this context," *id.* at 684 (internal citation and quotation marks omitted), extended the existing framework for government employee retaliation to independent contractors, thereby blotting out any meaningful distinction between the two for First Amendment retaliation purposes, *id.* at 677-85. *See also Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291 (2d Cir. 2013); *O'Hare Truck*

---

[6]       Although these facts are in dispute, we assume, as we must, that Berliner and Myers had full knowledge of the complaint and acted in retaliation for the speech articulated therein. *See Demoret*, 451 F.3d at 148 (in deciding whether qualified immunity applies courts must use "plaintiff's version of the facts" and view the evidence in the light most favorable to the plaintiffs); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996). Finally, it was clearly established that a complaint may constitute a form of speech for First Amendment purposes. *See Ruotolo*, 514 F.3d at 186 (stating that plaintiff's speech consisted of, *inter alia*, a lawsuit).

Based on the relevant case law at the time of the individual defendants' alleged retaliatory actions, we have no trouble concluding that the constitutional right implicated here was clearly established.

### CONCLUSION

To summarize, we hold that our review is properly limited to Golodner's speech in the form and context in which it existed at the time of the defendants' alleged retaliatory actions. We conclude that Golodner's 2008 complaint in *Golodner I* constituted speech that raised matters of public concern protected by the First Amendment and that his right to be free of government retaliation based on such speech was well established at the time defendants sought and selected an alternate security system provider. The district court did not err, therefore, when it determined that the individual defendants were not entitled to summary judgment on the basis of qualified immunity.

We take no position on whether Golodner will be able to substantiate his claim that the City's actions were, in fact, retaliatory. Similarly, we take no position as to whether the defendants may be entitled to qualified immunity at a later stage of the proceedings after the parties have had the benefit of discovery, and based on the resolution of such factual disputes as exist at the present time.

We are satisfied that Golodner has alleged that the individual defendants' conduct violated a clearly established right. Accordingly, we **AFFIRM** the January 23, 2012 order of the

16

United States District Court for the District of Connecticut denying qualified immunity and

**REMAND** the case to that court for further proceedings.