Flynn v. Bloomingdale

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of July, two thousand twenty-three.

PRESENT:

> PIERRE N. LEVAL,
> DENNY CHIN,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

Rita Flynn,

> *Plaintiff-Appellant*,

> v.                                                                No. 22-1431

Michael Bloomingdale, individually and in his official capacity for the New York State Department of Corrections and Community Supervision, John A. Shipley, individually and in his official capacity for the New York State Department of Corrections and Community Supervision, Daniel Oliver, individually and in his official capacity for the New York State Department of Corrections and Community Supervision,

> *Defendants-Appellees.*

_____

**FOR PLAINTIFF-APPELLANT:**          MICHAEL B. RANIS, Michael B. Ranis, Attorney at Law, Goshen, NY.

**FOR DEFENDANTS-APPELLEES:**          BENJAMIN W. HILL, Capezza Hill LLP, Albany, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on June 8, 2022, is **AFFIRMED**.

Plaintiff Rita Flynn ("Plaintiff") appeals from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*), dismissing her claims, which she brought pursuant to 42 U.S.C. § 1983, that she was: (1) retaliated against, in violation of the First Amendment, for engaging in protected speech—namely, through two lawsuits she filed in state and federal court; and (2) not afforded adequate procedural due process in an arbitration hearing in violation of the Fourteenth Amendment. Because we hold that Plaintiff's previous lawsuits do not constitute protected speech and that Plaintiff received the process she was due, we affirm the judgment of the district court. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we only recount in a limited manner to explain our decision.

**Procedural History**

Plaintiff is a former parole officer with the Department of Corrections and Community Supervision ("DOCCS"). She filed two successive lawsuits, a lawsuit in federal court ("*Flynn*

2

*I*"[1]), and a lawsuit in state court ("*Flynn II*"[2]), alleging that she had been demoted from her position (and subjected to other retaliatory behavior) because she had spoken out about the discharge plan of John Doe ("Doe"), a serial sexual offender, and the threat he posed to the community.

Plaintiff also filed several grievances concerning DOCCS's treatment and evaluations of her. Defendant Oliver initiated an investigation into DOCCS's conduct in response. At some point, however, the focus of the investigation shifted to whether Plaintiff had improperly disclosed confidential information about parolees via her personal email to counsel. Plaintiff subsequently received a Notice of Discipline ("NOD") informing her that the disclosures violated restrictions on protecting the identities of parolees. The NOD recommended Plaintiff's termination.

Plaintiff grieved the NOD, which culminated in an arbitration hearing regarding Plaintiff's challenge to her termination. Defendant Bloomingdale represented DOCCS, and Defendant Shipley participated in the hearing. At the start of the hearing, Plaintiff agreed to resign and signed a settlement agreement. Plaintiff did so after Defendants Bloomingdale and Shipley threatened to refer her to prosecution in connection with the disclosures. Thereafter, Plaintiff filed this lawsuit ("*Flynn III*").

---

[1] *Flynn I* alleged First Amendment retaliation and state law public employee whistleblower claims against DOCCS and various DOCCS employees. The district court dismissed the operative complaint in its entirety. It held that Plaintiff's speech—her warnings about the insufficiencies of Doe's discharge plan—was not protected and declined to exercise supplemental jurisdiction over the state law claim.

[2] *Flynn II* alleged a state law public employee whistleblower claim against DOCCS. As in *Flynn I*, Plaintiff alleged that DOCCS demoted her in retaliation for her warning that Doe's discharge plan was inadequate. Before the case went to trial, however, the parties reached a settlement in a related arbitration (discussed in greater detail above), and the state court dismissed the claim.

**Discussion**

**I.       Standard of Review**

We review a dismissal under Rule 12(b)(6) de novo, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2d Cir. 2007).

**II.      First Amendment Claim**

In *Flynn III*, Plaintiff contends that Defendants retaliated against her for filing *Flynn I* and *II*. Here, unlike in *Flynn I* and *Flynn II*, Plaintiff argues that her previous lawsuits, rather than her warnings about Doe's discharge plan described in the lawsuits, were themselves protected speech under the First Amendment.[3] We are unpersuaded, as we conclude that the *Flynn I* and *II* lawsuits were not themselves speech on a matter of public concern.

To determine whether a public employee's speech is protected, we ask "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "If [we] determine[] that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (quoting *Garcetti*, 547 U.S. at 418).

---

[3] Indeed, in *Flynn I*, the district court held that Plaintiff's warnings about Doe's discharge plan did not constitute protected speech. There, the district court reasoned that although the warnings "undeniably" addressed a matter of public concern, Plaintiff had failed to plausibly allege that she was speaking as a citizen rather than as a DOCCS parole officer. J.A. at 20–21. We thus focus our analysis not on Plaintiff's warnings (i.e., the speech identified in *Flynn I* and *II*, which Plaintiff concedes were made up of "almost identical facts"), but on the lawsuits themselves. Appellant's Br. at 4 n.1.

4

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999). While neither conclusive nor dispositive, the motive of the speaker—for example, whether she is seeking to redress personal grievances or has a broader public purpose—is a factor that can be considered alongside the content of the speech. *Sousa*, 578 F.3d at 173–75.

We have previously held that a lawsuit filed against a public employer may constitute speech on a matter of public concern. *See, e.g.*, *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014) ("[W]e have held that matters implicate the public interest when the plaintiff wanted to debate issues of discrimination, that the plaintiff's suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that the plaintiff's suit was part of an overall effort to correct allegedly unlawful practices or bring them to public attention." (internal quotation marks and citations omitted and alterations adopted)). In *Golodner*, we concluded that the plaintiff's previous lawsuit against the city of New London and several New London police officers constituted speech on a matter of public concern because it was not related "to the conditions of [plaintiff's] employment" and was instead an "attempt to vindicate his constitutional rights under the Fourth and Fourteenth Amendments in the face of alleged police misconduct directed against him as a private citizen." *Id.* at 204.

That is not the case here. *Flynn I* and *II* sought redress for Plaintiff's demotion and other forms of retaliation and to secure personal relief for Plaintiff through monetary and injunctive relief. For example, in *Flynn I*, Plaintiff requested damages and "injunctive relief . . . including reinstatement to her Special Assignment in the Sexual Offenders' Unit and the reinstatement of overtime compensation that comes with that position." J.A. at 52. Similarly, in *Flynn II*, Plaintiff

5

requested damages and numerous forms of injunctive relief, all of which were aimed at ameliorating past retaliation against Plaintiff and preventing retaliation against her in the future. *Id.* at 117–18. Because *Flynn I* and *II* addressed Plaintiff's personal treatment at work, rather than systemic or pervasive misconduct, we conclude that the lawsuits themselves did not constitute speech on a matter of public concern. Accordingly, *Flynn I* and *Flynn II* do not constitute protected speech. *See Ruotolo v. City of New York*, 514 F.3d 184, 189–90 (2d Cir. 2008) (holding plaintiff's lawsuit was not speech on a matter of public concern because its purpose was to vindicate plaintiff's personal grievances and the relief sought was personal to him); *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (concluding plaintiff's statements were not on a matter of public concern because they "were personal in nature and generally related to her own situation"). As a result, Plaintiff's First Amendment retaliation claim fails.

### III. Due Process Claim

We also reject Plaintiff's claim that Defendants Bloomingdale and Shipley violated her right to procedural due process during the arbitration hearing, as we find that she received all the process she was due.[4] "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Plaintiff's due process claim fails

---

[4] "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Because we conclude that Plaintiff was afforded adequate due process, we do not reach the argument of Defendants Bloomingdale and Shipley that Plaintiff did not plausibly plead a cognizable deprivation of a liberty or property interest since she resigned and accepted a settlement and thus short-circuited the termination process. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996).

regardless of how we classify the conduct of Defendants Bloomingdale and Shipley.

If we were to find that the conduct of Defendants Bloomingdale and Shipley was random and unauthorized, "the existence of a meaningful post-deprivation remedy . . . would automatically satisfy procedural due process." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006). As Plaintiff concedes, she could have challenged the arbitration by pursuing an Article 78 proceeding, a hearing which we have previously held is a meaningful post-deprivation remedy. *See Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes."). She simply chose not to do so. Accordingly, if we were to find that the actions of Defendants Bloomingdale and Shipley were random and unauthorized, the availability of an Article 78 proceeding would satisfy procedural due process. *See Hellenic*, 101 F.3d at 881.

If we were to find that Defendants Bloomingdale and Shipley acted under established state procedures, our task would be to determine whether Plaintiff received a pretermination hearing that satisfied the "essential requirements of due process." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (holding when a public employee is terminated, procedural due process requires a pretermination hearing). "The essential requirements of due process" in this context are "notice and an opportunity to respond." *Id.*; *see also Locurto*, 264 F.3d at 174.

Prior to the arbitration, Plaintiff received timely notice of the charges against her via the NOD. She also received an opportunity to respond. For instance, at the arbitration Plaintiff was represented by counsel and permitted to present evidence and call witnesses in her defense. The fact that Plaintiff chose to end the arbitration and to settle before she could take advantage of these procedures does not mean she was deprived of process. Thus, if we were to find that the conduct of Defendants Bloomingdale and Shipley was part of an established state procedure, Plaintiff's

7

claim would fail because she received all the procedural process that was due.  *See Loudermill*, 470 U.S. at 547–48; *Locurto*, 264 F.3d at 174.

## Conclusion

We have considered all of Plaintiff's remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court